IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WILLIAM GASPAR; JOYAL K. GASPAR, <br><br> Plaintiffs, <br><br> vs. <br><br> JP MORGAN CHASE BANK, NATIONAL ASSOCIATION, AS SERVICING AGENT FOR DEUTSCHE BANK NATIONAL TRUST COMPANY AS TRUSTEE FOR LONG BEACH MORTGAGE LOAN TRUST 2006-11; JOHN DOE 1-10; JANE DOE 1-10; DOE PARTNERSHIPS 1-10; DOE CORPORATIONS 1-10; DOE ENTITIES 1-10; and DOE GOVERNMENTAL UNITS 1-10, ET. AL. <br><br> Defendants. | CV. NO. 10-00064 DAE-RLP |

_____

ORDER DISMISSING PLAINTIFFS' COMPLAINT WITH LEAVE TO AMEND

On February 6, 2012, the Court heard Defendant JP Morgan Chase

Bank, N.A.'s ("Defendant") Motion for Summary Judgment ("Motion") (Doc.

# 74).  Diana Danmeyer, Esq., appeared at the hearing on behalf of Plaintiffs

William Gaspar and Joyal K. Gaspar ("Plaintiffs"); David A. Gruebner, Esq.,

appeared on behalf of Defendant.  After reviewing the motion and the supporting

and opposing memoranda, the Court **DISMISSES** Plaintiffs' Complaint with leave to amend.

## BACKGROUND

### I.   Underlying Facts and Complaint

The case at bar relates to a mortgage loan that Plaintiffs obtained from Washington Mutual Bank, FA ("WaMu") in October 2006 to purchase a home located in Kailua Kona, Hawaii.

In their Complaint, Plaintiffs allege that they inquired about "obtaining credit" through "Charter Funding" to purchase a home and were approved for an amount of $660,675.00.  ("Compl.," Doc. # 1-2, at 3.)  Plaintiffs assert that on or about October 11, 2006, they executed a promissory note and security agreement to purchase the home.  (Id.)  Plaintiffs allege that they did not receive a copy of the loan documents until the signing on October 11, 2006.  (Id.)  Plaintiffs further allege that they had not seen or received a copy of the Truth in Lending Disclosure Statement which disclosed an amount financed of $660,675.00, a finance charge of $1,541,280.02, an annual percentage rate of 9.971 percent, and a security interest in the property.  (Id.)

In connection with these facts, Plaintiffs assert nine separate causes of action:

2

- <u>Count I</u>:       Racketeer Influence and Corrupt Organizations ("RICO") Violations

- <u>Count II</u>:      Failure to Provide the Right to Rescind in Purchased Transactions

- <u>Count III</u>:     Failure to Provide TILA Disclosures and/or Failure to Provide Timely TILA Disclosures in Purchased Transactions

- <u>Count IV</u>:      Failure to Provide Accurate TILA Disclosures in Purchased Transactions

- <u>Count V</u>:       Failure to Retain Documents in Purchased Transactions

- <u>Count VI</u>:      Failure to Provide Proper Disclosures Documents in Purchased Transactions

- <u>Count VII</u>:     Failure to Provide Timely Disclosures Documents in Purchased Transactions

- <u>Count VIII</u>:   Failure to Provide Proper Re-disclosure Documents in Purchased Transactions

- <u>Count IX</u>:      Failure to Provide Consumer Handbook on ARM's in Purchased Transactions

3

(Id. at 4–7.)  Plaintiffs seek actual damages, civil damages, a release of all liens, mortgages, and deeds of trust of property, as well as removal of all negative credit reporting history.  (Id. at 8.)

II.     WaMu, FDIC, and Receivership

On September 25, 2008, the United States Office of Thrift Supervision seized WaMu and placed it in receivership.  See Yeomalakis v. FDIC, 562 F.3d 56, 59 (1st Cir. 2009).  The Federal Deposit Insurance Corporation ("FDIC") acted as receiver.  Id.  WaMu's assets and certain liabilities were sold to Defendant pursuant to a Purchase and Assumption Agreement ("P & A Agreement") which provides, in relevant part:

> 2.5 Borrower Claims.
>
> Notwithstanding anything to the contrary in this Agreement, any liability associated with borrower claims for payment of or liability to any borrower for monetary relief, or that provide for any other form of relief to any borrower, whether or not such liability is reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, legal or equitable, judicial or extrajudicial, secured or unsecured, whether asserted affirmatively or defensively, related in any way to any loan or commitment to lend made by the Failed Bank prior to failure, or to any loan made by a third party in connection with a loan which is or was held by the Failed Bank or otherwise arising in connection with the Failed Bank's lending or loan purchase activities are specifically not assumed by the Assuming Bank.

("P & A Agreement," Doc. # 75-4, ¶ 2.5.)[1]  Defendant is the servicer of the subject

loan.  (Doc. # 37 at 6; see Doc. # 84 at 2, 14 .)

III.   Procedural History

        Plaintiffs filed their Complaint in the Third Circuit of the State of

Hawaii on November 19, 2009.  (Compl. at 1.)  On February 4, 2010, Defendant

removed to this Court.  (Doc. # 1, at 7.)  On December 28, 2010, Defendant filed a

Motion to Dismiss.  ("Mot.," Doc. # 37.)  At a hearing on May 12, 2011,

Defendant made an Oral Motion to Withdraw its Motion to Dismiss without

Prejudice.  The Court granted Defendant's Oral Motion.  (Doc. # 56.)

        On July 1, 2011, Plaintiffs filed an Amended Complaint (Doc. # 59),

but on July 5, 2011, Plaintiffs were informed by the Clerk's Office that the

Amended Complaint was not filed correctly.  On July 18, 2011, Plaintiffs filed a

corrected First Amended Complaint.  (Doc. # 60.)  On August 1, 2011, Defendant

filed a Motion to Strike the Amended Complaint.  (Doc. # 62.)  On August 31,

2011, United States Magistrate Judge Richard L. Puglisi denied Plaintiffs' request

for leave to file their Amended Complaint and denied as moot Defendant's Motion

---

        [1]  The Court takes judicial notice of the P & A Agreement, as it is readily
available on the FDIC's website and "[j]udicial notice may be taken of documents
available on government websites."  Jarvis v. JP Morgan Chase Bank, N.A., 2010
WL 2927276, at *1 (C.D. Cal. July 23, 2010) (citing Laborers' Pension Fund v.
Blackmore Sewer Constr., Inc., 298 F.3d 600, 607 (7th Cir. 2002)).

to Strike.  (Doc. # 67.)  The operative complaint, therefore, is Plaintiffs' original

Complaint.  See Curry v. Cal. Dep't of Corr. & Rehab., 2011 WL 855828, at *1

(N.D. Cal. Mar. 9, 2011) (stating that with the amended complaint being stricken,

plaintiff's "original complaint remains the operative pleading").

On November 4, 2011, Defendant filed the instant Motion for

Summary Judgment.  ("Mot.," Doc. # 74.)  Defendant also filed a Concise

Statement of Facts in Support of its Motion for Summary Judgment.  ("CSOF,"

Doc. # 75.)  On January 16, 2012, Plaintiffs filed a Response in Opposition to

Defendant's Motion for Summary Judgment ("Opposition").  ("Opp'n," Doc.

# 84.)  On January 23, 2012, Defendant filed a Reply.  ("Reply," Doc. # 85.)  On

January 23, 2012, Defendant filed a Correction to its Concise Statement of Facts in

Support of its Motion for Summary Judgment.  (Doc. # 86.)

<u>STANDARD OF REVIEW</u>

I.   <u>Subject Matter Jurisdiction</u>

Pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1), a court

may dismiss claims over which it lacks subject matter jurisdiction.  In a motion to

dismiss for lack of subject matter jurisdiction, the plaintiff bears the initial burden

of proving that subject matter jurisdiction exists.  <u>Robinson v. United States</u>, 586

F.3d 683, 685 (9th Cir. 2009); <u>Rattlesnake Coalition v. U.S. Env't Prot. Agency</u>,

509 F.3d 1095, 1102 n.1 (9th Cir. 2007).  "In considering the jurisdiction questions, it should be remembered that 'it is a fundamental principle that federal courts are courts of limited jurisdiction.'" <u>Stock West, Inc. v. Confederated Tribes of the Colville Reservation</u>, 873 F.2d 1221, 1225 (9th Cir. 1989) (quoting <u>Owen Equip. & Erection Co. v. Kroger</u>, 437 U.S. 365, 374 (1978)).  Upon a motion to dismiss, a party may make a jurisdictional attack that is either facial or factual. <u>Safe Air for Everyone v. Meyer</u>, 373 F.3d 1035, 1039 (9th Cir. 2004).  A facial attack occurs when the movant "asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction."  <u>Id.</u>  By contrast, a factual attack occurs when the movant "disputes the truth of the allegations, that by themselves, would otherwise invoke federal jurisdiction."  <u>Id.</u>

Where the movant makes a factual attack on jurisdiction, the court may review evidence beyond the complaint.  <u>See</u> <u>Savage v. Glendale Union High Sch.</u>, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003).  In resolving an attack on the facts, a court may weigh evidence to determine whether it has jurisdiction, as long as the jurisdictional facts are not intertwined with the merits.  <u>Rosales v. United States</u>, 824 F.2d 799, 803 (9th Cir. 1987) (holding jurisdictional facts as to date of accrual of medical malpractice claim were intertwined with factual findings of onset of medical ailment).  In such circumstances, "no presumptive truthfulness attaches to

7

plaintiff's allegations, and the existence of disputed facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Thornhill Publ'g Co., Inc. v. Gen. Tel.& Elecs. Corp., 594 F.2d 730, 733 (9th Cir. 1979). "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." Savage, 343 F.3d at 1039 n.2.

## II.    Failure to State a Claim

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule") "tests the legal sufficiency of a claim." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  A complaint may be dismissed as a matter of law for two reasons: (1) lack of a cognizable legal theory or (2) insufficient facts alleged to support a cognizable theory. Id. (citing Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir.1990)).  Because a Rule 12(b)(6) motion to dismiss focuses on the sufficiency of a claim statement, review is generally limited to the face of the complaint. Lee v. City of Los Angeles, 250 F .3d 668, 688 (9th Cir. 2001) (citation omitted); Clegg v. Cult Awareness Network, 18 F.3d 752, 754 (9th Cir. 1994) (citations omitted).  The Court must accept all allegations of

material fact as true and construe them in a light most favorable to the nonmoving party.  Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).  The Court, however, need not accept as true conclusory allegations of law, unwarranted deductions of fact, and unreasonable inferences.  Id.

As to a plaintiff's pleading burden, the Supreme Court has held that while a complaint "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Thus, to survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Id. at 570.  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556).  If a court dismisses the complaint or portions thereof, it must consider whether to grant leave to amend.  Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000) (finding that leave to amend should be granted "if it appears at all possible that the plaintiff can correct the defect" (quotations and citations omitted)).

<u>DISCUSSION</u>

Defendant proffers four arguments for why it is entitled to summary judgment.   First, Defendant contends that Plaintiffs have failed to exhaust their administrative remedies under the Federal Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA").  (Mot. at 16–17.)  Next, Defendant argues that the P & A Agreement whereby Defendant obtained WaMu's assets and certain liabilities specifically bars all claims against Defendant with respect to alleged acts and/or omissions committed by WaMu before WaMu's seizure and placement into receivership.  (<u>Id.</u> at 17.)  Third, Defendant argues that to the extent that Plaintiffs allege a Federal Trade Commission ("FTC") claim, the claim fails because the FTC Act does not provide a private right of action.  (<u>Id.</u> at 25–26.)  Finally, Defendant argues that Plaintiffs' RICO claim is insufficiently pled.  (<u>Id.</u> at 26–28.)

I.      <u>Federal Institutions Reform, Recover and Enforcement Act</u>

Defendant first argues that the Court lacks subject matter jurisdiction over Plaintiffs' claims because Plaintiffs failed to exhaust their administrative remedies pursuant to FIRREA.  The Court construes Defendant's Motion for Summary Judgment with respect to this issue as a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

10

Applying Rule 12(b)(1), courts have found that a borrower's claims—to the extent based on conduct by a failed institution that has been taken over by the FDIC—are subject to the administrative claims process outlined in FIRREA.  FIRREA outlines a mandatory administrative process for claims made against the assets of a failed depository institution that is in FDIC receivership, and, pursuant to this statutory scheme, "no court has jurisdiction over the claim until the exhaustion of this administrative process."  Intercontinental Travel Mktg v. FDIC, 45 F.3d 1278, 1282 (9th Cir. 1994); see also Henrichs v. Valley View Dev., 474 F.3d 609, 614 (9th Cir. 2007).  Specifically, 12 U.S.C. § 1821(d)(13)(D) provides:

> Limitation on judicial review.  Except as otherwise provided in this subsection, no court shall have jurisdiction over-
>
> (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or
>
> (ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

12 U.S.C. § 1821(d)(13)(D).  In other words, this section "strips all courts of jurisdiction over claims made outside the administrative procedures of [FIRREA] . . . .  The statute bars judicial review of any non-exhausted claim,

11

monetary or nonmonetary, which is 'susceptible of resolution through the claims procedure.'"  Resolution Trust. Corp. v. Midwest Fed. Sav. Bank of Minot, 36 F.3d 785, 791 (9th Cir. 1993) (quoting Henderson v. Bank of New England, 986 F.2d 319, 320 (9th Cir. 1993)).

Courts have applied this jurisdictional bar to claims against not only failed banks and the FDIC, but to entities that acquired the assets of the failed institution from the FDIC.  See Caires v. JP Morgan Chase Bank, 745 F. Supp. 2d 40, 48–49 (D. Conn. 2010) ("Absent a transfer of liability by the FDIC and assumption of liability by a subsequent purchaser, such as Chase, the liability remains with the FDIC and subject to the claim exhaustion procedures."); Am. First Fed., Inc. v. Lake Forest Park, Inc., 198 F.3d 1259, 1263 n.3 (11th Cir. 1999) ("AFF, having purchased the note from the RTC, stands in the shoes of the RTC and acquires its protected status under FIRREA . . . .  Thus, if Lake Forest is barred [by Section 1821(d)] from asserting this claim against the RTC, it is similarly barred from asserting it against AFF."); Rockwell v. Chase Bank, 2011 WL 2292353 (W.D. Wash. June 7, 2011) (holding that to the extent plaintiff's claims against Chase are "based on WaMu's pre-receivership acts or omissions, they are dismissed with prejudice for lack of subject matter jurisdiction"); Rundgren v. Wash. Mut. Bank, F.A., Cv. No. 09-00495 JMS/KSC, 2010 WL 4960513 (D. Haw.

Nov. 30, 2010) ("[T]o the extent that Plaintiffs allege claims against Chase for WaMu's conduct, liability for those claims remain with the FDIC and are therefore subject to FIRREA's administrative claims process."); Benson v. JPMorgan Chase Bank, N.A., 2010 WL 3168390 (N.D. Calif. Aug. 10, 2010) (holding that the court lacked subject matter jurisdiction over claims against Chase because they relate to WaMu's conduct).

Applying these principles to the instant case, the Court finds that it has no jurisdiction to hear Counts II through IX of the Complaint. Counts II, III and IV relate to WaMu's alleged failure to provide accurate or timely TILA Disclosures or right to rescind notices. (Compl. at 4–5.) Count V relates to WaMu's alleged failure to retain TILA Disclosures or Notices. (Id. at 6.) Count VI pertains to WaMu's alleged failure to provide proper disclosures in violation of Regulation Z of TILA. Counts VII through IX relate to WaMu's alleged failure to provide timely disclosures, failure to provide proper re-disclosures, and a failure to provide a consumer handbook on ARM's in the transaction. Each of these claims stem from the origination of the loan and relate to acts and/or omissions allegedly committed by WaMu with respect to the loan before WaMu was seized and placed into receivership. Because the FDIC sold WaMu's assets and certain liabilities to Defendant with an explicit disclaimer of liability regarding borrower claims

"related in any way to any loan or commitment made by [WaMu] prior to failure,"

Plaintiffs had to exhaust their administrative remedies before pursuing these

claims.  Caires, 745 F. Supp. 2d at 48–49 ("Absent a transfer of liability by the

FDIC and assumption of liability by a subsequent purchaser, such as Chase, the

liability remains with the FDIC and subject to the claim exhaustion procedures.").

Accordingly, the Court has no jurisdiction to hear Counts II through IX.

In their Opposition, Plaintiffs urge the Court to invalidate FIRREA as

violative of the Equal Protection Clause.[2]  Plaintiffs specifically argue:

> Given what the Defendants assert here, it is the economic equivalent
> to enforcing a system in which the Plaintiffs would not be afforded
> equal protection under the law in the context of the current statutory
> schemes.  For example, one borrower is able to receive modification
> offers, which result in saving his house from non-judicial foreclosure
> because the federal government has provided his financial institution

---

[2] In their Opposition, Plaintiffs also argue that Defendant is "not the real party in interest to pursue this action" and that Defendant has no standing to proceed with the instant Motion for Summary Judgment.  (Opp'n at 2–5.)  This argument makes no sense against a defendant as standing is a requirement for a plaintiff in order to proceed in a lawsuit.

Plaintiffs also assert in their Opposition that Defendant has no standing to foreclose.  This is a new allegation that does not appear in the Complaint. Generally, a plaintiff may not raise additional claims in a response to a motion for summary judgment.  See Kaiser v. First Hawaiian Bank, 30 F. Supp. 2d 1255, 1261 n. 3 (D. Haw. 1997); see also Grayson v. O'Neill, 308 F.3d 808, 817 (7th Cir. 2002) (citing Shanahan v. City of Chicago, 82 F.3d 776, 781 (7th Cir. 1996)).  The Court will not consider new allegations and/or claims raised for the first time in an Opposition.

> with the funds to remain solvent and repair these assets.  On the other
> hand, Plaintiffs, who are in the exact same situation, and who have
> suffered the same malfeasance in connection with their loans and
> mortgage, faces foreclosure because the federal government applied
> one law, and had placed his insolvent institution into receivership.

(Opp'n at 9.)  It is not entirely clear to the Court what, precisely, Plaintiffs here

argue, but the Court is not persuaded that it should find an application of the

FIRREA claims procedure in the instant case to be unconstitutional.

First, Plaintiffs' complaint cannot in any way be construed as raising

an equal protection challenge.  Nothing in the complaint suggests that Plaintiffs'

rights would be violated by a discriminatory application of FIRREA or that

Defendants or the Federal Government acted on the basis of an improper or

arbitrary classification—necessary requirements of an equal protection or due

process claim.  See Argabright v. United States, 35 F.3d 472, 476 (9th Cir. 1994)

(finding a constitutional claim fails because "nothing in the amended complaint

even remotely suggests that plaintiffs were challenging the actions . . . on

constitutional grounds) (citing Conley v. Gibson, 355 U.S. 41, 47 (1957); see also

Feigel v. F.D.I.C., 935 F. Supp. 1090, 1100 (S.D. Cal. 1996) (same).  Even if

Plaintiffs' Complaint could be construed as having an equal protection claim,

which it plainly cannot, Plaintiffs have failed to show that the application of

FIRREA's administrative claims procedure in this case would have a

discriminatory effect or would be motivated by a discriminatory purpose.  Feigel, 935 F. Supp. at 1100; see also Argabright, 35 F.3d at 477.  There simply is no foundation or factual basis for an equal protection argument in this matter, and the Court will not here consider one.[3]

Accordingly, the Court finds it has no jurisdiction to hear Counts II through IX of the Complaint.

II.   P & A Agreement

As an alternative ground for relief, Defendant argues that even if the Court has jurisdiction, the claims fail to the extent they are based on WaMu's conduct prior to its seizure pursuant to the P & A Agreement.  With respect to Counts II through IX of the Complaint, the Court agrees.

> A number of federal courts have now held that [the] P & A Agreement relieves Chase of liability for borrowers' claims against Washington Mutual. These courts reason that Chase became a successor to Washington Mutual by executing the P & A Agreement; the P & A Agreement governs the status of Chase as successor; and Article 2.5 of the P & A Agreement establishes that Chase did not assume liability for borrowers' claims related to loans made by Washington Mutual prior to September 25, 2008. On this basis, the district courts . . . have repeatedly dismissed TILA and RESPA claims

---

[3] Indeed, in the subsection of their motion entitled "Application of FIRREA, Unilaterally, is Unconstitutional Because Plaintiffs Would Not Be Afforded Equal Protection . . . ," Plaintiffs do not cite to a single case in support of their equal protection argument.  (Opp'n at 9–11.)

brought against Chase because the P & A Agreement specifies that Chase did not assume liability for such claims.

McCann v. Quality Loan Serv. Corp, 729 F. Supp. 2d 1238, 1241–42 (W.D. Wash. 2010) (citing Danilyuk v. JP Morgan Chase Bank, N.A., 2010 WL 2679843 (W.D. Wash. July 2, 2010); Federici v. Monroy, 2010 WL 1345276 (N.D. Cal. Apr. 6, 2010); see also Biggins v. Wells Fargo & Co., 266 F.R.D. 399, 414–415 (N.D. Cal. 2009) (dismissing claims against Chase where plaintiff's theory of liability stemmed from WaMu's conduct because of P & A Agreement). In light of this abundant authority concluding the P & A Agreement absolves Defendant from liability for WaMu's pre-seizure conduct, the Court agrees that to the extent Plaintiffs allege Defendant is liable for WaMu's pre-seizure conduct, the P & A Agreement operates to shield Defendant from liability.

As discussed supra, Counts II through IX are all based on WaMu's conduct when the loan was issued—prior to WaMu's seizure and placement into receivership.[4] Defendant cannot, therefore, be liable for WaMu's conduct on these counts because of the P & A Agreement.

---

[4] Plaintiffs do not dispute this fact in their Opposition.

17

III.    Federal Trade Commission Act

Counts II, III, and IV of Plaintiffs' Complaint allege claims under the Federal Trade Commission ("FTC") Act, citing 15 U.S.C. § 45(a).  Even if the Court had jurisdiction over Plaintiffs' claims, such claims cannot lie because it is well-established that there is no private right of action under that statute.[5]  See Carlson v. Coca-Cola Co., 483 F.2d 279, 280 (9th Cir. 1973) (stating that 15 U.S.C. § 45(a)(1) provides a plaintiff "with no direct remedy, either explicitly or implicitly"); Dreisbach v. Murphy, 658 F.2d 720, 730 (9th Cir. 1981) ("This circuit has held that private litigants may not invoke the jurisdiction of the federal district courts by alleging that defendants engaged in business practices proscribed by [§] 5(a)(1) [of the FTC Act].  The Act rests initial remedial power solely in the Federal Trade Commission."); Holloway v. Bristol-Myers Corp., 485 F.2d 986, 1002 (D.C. Cir. 1973) ("To imply a private right of action to enforce the Federal Trade Commission Act-however desirable or logical this might appear in the abstract-would be contrary to the legislative design which we discern to have been deliberately wrought.").

Therefore, even if the Court had jurisdiction over Counts II, III and IV, Plaintiffs' claims brought under the FTC Act would fail.

_____

[5]  Plaintiffs do not address this issue in their Opposition.

IV.   Count I: RICO Violations

Defendant argues that Count I of Plaintiffs' Complaint, which alleges

a RICO violation, is insufficiently pled and cannot survive a Rule 12(b)(6) motion

to dismiss.  The Court accordingly construes Defendant's Motion for Summary

Judgment with respect to Count I as a 12(b)(6) Motion to Dismiss.

In its entirety, Count I provides:

Count 1: Title 18 ch.96 § 1962(a)(b)(c)(d) RACKETEER
INFLUENCED AND CORRUPT ORGANIZATIONS

1.      Plaintiffs have reason to believe unlawful practices of
racketeering and corrupt actions have taken place and request an
answer and full accounting of actual unlawful debt claim under this
court action.

(Compl. at 4.)  The Court concludes that this allegation falls far short of the

pleading requirements of Rule 12(b)(6).

A plaintiff must prove the following five elements to succeed on a

civil RICO claim:  (1) conduct of the (2) enterprise (3) through a pattern of, (4)

racketeering activity, and (5) that defendant caused injury to plaintiff's business or

property.  Chaset v. Fleer/Skybox Int'l, LP, 300 F.3d 1083, 1086 (9th Cir. 2002).

This fifth element has two related components.  First, the RICO violation must be

the proximate cause of a plaintiff's injury.  Holmes v. Securities Investor Prot.

Corp., 503 U.S. 258, 268 (1992).  Second, a plaintiff may only recover under a

§ 1962 action to the extent that "he has been injured in his business or property by the conduct constituting the [RICO] violation." <u>Sedima, SPOC v. Imrec Co.</u>, 47 U.S. 479, 495 (1985).  A showing of injury requires proof of concrete loss.  <u>See</u> <u>Oscar v. Univ. Students Co-op Ass'n</u>, 965 F.2d 783, 785 (9th Cir. 1992).

An "'enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).  The Supreme Court has elaborated "'that RICO reaches 'a group of persons associated together for a common purpose of engaging in a course of conduct.'"  <u>Boyle v. United States</u>, 129 U.S. 2237, 2243 (2009) (quoting <u>United States v. Turkette</u>, 452 U.S. 576, 583 (1981)).

In order to demonstrate a "pattern" of racketeering activity, as required by § 1962, a plaintiff must allege at least two predicate acts.  <u>H.J. Inc. v. NW Bell Tel. Co.</u>, 492 U.S. 229, 237–38 (1989).  The two predicate acts must not be isolated or sporadic; they must be related and amount to or pose a threat of continued criminal activity.  <u>Id.</u> at 239.  "The predicate acts of racketeering satisfy the relationship test if they 'have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated.'"  <u>Corley v. Rosewood Care Ctr., Inc. of</u>

20

Peoria, 142 F.3d 1041, 1048 (9th Cir. 1998).  Proof of continued criminal activity may be established through a series of related acts that extend over a substantial period of time, known as close-ended continuity, or by a showing of a threat of repetition, known as open-ended continuity.  Turner v. Cook, 362 F.3d 1219, 1229 (9th Cir. 2004).

Plaintiffs' lone sentence alleging a RICO violation against Defendant in Count I of the Complaint is wholly insufficient to sustain a civil RICO cause of action.  There is no allegation related to the five elements a plaintiff must demonstrate to prevail on a RICO claim.  There is no allegation of two predicate acts.  There is no allegation of an enterprise nor an allegation of a pattern of conduct.[6]  The Court, however, cannot conclude with certainty that Plaintiffs cannot assert a RICO claim if given the opportunity.  Therefore, the Court **DISMISSES** without prejudice Count I with leave to amend.

<u>CONCLUSION</u>

For the reasons stated above, the Court **DISMISSES** Plaintiffs' Complaint, with leave to amend as to their RICO claim in Count I.  Plaintiffs are further granted leave to file an amended complaint to allege any claims based on

---

[6] Plaintiffs make no argument with respect to this Count in their Opposition.

conduct by Defendant JP Morgan Chase Bank N.A. after September 25, 2008.

Any amended complaint must be filed within 30 days of the filing of this Order.

Based on the above analysis, granting leave to amend their claims against

Defendant that relate to WaMu's conduct before September 25, 2008 or under the

Federal Trade Commission Act would be futile.  Therefore, Plaintiffs are not

granted to leave to amend those claims.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, February 6, 2012.

_____
David Alan Ezra
United States District Judge

Gaspar et al. v. JP Morgan Chase Bank, et. al, Cv. No. 10-00064 DAE-RLP;
ORDER DISMISSING PLAINTIFFS' COMPLAINT WITH LEAVE TO AMEND